855 So.2d 835 (2003)
STATE of Louisiana, Appellee,
v.
Hozey Falicinno IVERSON, Appellant.
No. 37,369-KA.
Court of Appeals of Louisiana, Second Circuit.
September 24, 2003.
*836 G. Paul Marx, Lafayette, for Appellant.
Hozey Falicinno Iverson, Pro Se.
Paul J. Carmouche, District Attorney, J. Thomas Butler, Edward M. Brossette, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
WILLIAMS, J.
The defendant, Hozey F. Iverson, was charged by bill of information with possession of a controlled dangerous substance, to-wit: cocaine, second offense, a violation of LSA-R.S. 40:967(C) and 40:982. After a jury trial, the defendant was found guilty as charged. The trial court adjudicated defendant a third felony offender and imposed the mandatory sentence of life imprisonment without the benefit of parole, probation or suspension of sentence. Defendant's motions to quash the multiple offender bill, for new trial and for post verdict judgment of acquittal were denied. Defendant appeals his conviction and sentence. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On September 4, 1999, at approximately 1:45 a.m., the defendant's vehicle was being pursued by city of Shreveport Police Officer J.E. Coffey because the defendant was playing the music in his vehicle too loudly. Initially, the defendant attempted to flee by increasing his speed; however, he eventually pulled into a driveway and opened his car door.
When the officer arrived, the defendant was holding his right hand in the upper portion of his overalls. He disregarded the officer's verbal command to put his hand down and exit the vehicle. The officer pulled out his service weapon and called for backup. After Officers Ramsey and L. Brett Pitman arrived and pulled *837 their weapons, defendant put his hands on his head. Officer Coffey patted down defendant's chest and felt what the officer believed to be drugs. The defendant got out of the vehicle and was placed on the ground and handcuffed. He was read his Miranda rights and Officer Pitman continued the pat down search of the defendant's lower torso for weapons. At some point, another officer, Amy Bowman, arrived at the scene.
The defendant was then directed to stand up to allow the officer to conduct a full search of his person incident to his arrest. The officer shook the defendant's pants legs. After the defendant was moved to be escorted to a patrol car, the officers noticed a large bag of what they suspected to be cocaine on the ground where the defendant had been standing during the full search of his person.
Subsequently, the defendant was charged by bill of information with possession of cocaine. The bill alleged that this charge was a second or subsequent offense under the Uniform Controlled Dangerous Substance Act (CDS). LSA-R.S. 40:967(C); 40:982. It listed defendant's CDS prior conviction as possession with intent to distribute cocaine. The bill of information was subsequently amended to reflect that the prior CDS conviction was a 1997 conviction for possession of cocaine.
After a hearing, the trial court denied the defendant's motion to suppress evidence. The state then filed a habitual offender bill of information against the defendant charging him as a third felony offender. The defendant's motion to quash the multiple offender bill alleged that the enhanced sentence under the habitual offender law would be a prohibited double enhancement because the state had elected to charge him under the CDS statute's enhanced penalty provision. The trial court denied the motion to quash, finding that different predicates were used for the CDS second offense conviction and the habitual offender sentence enhancement. Defendant was adjudicated a third felony offender and sentenced to life imprisonment at hard labor. Defendant appeals his conviction, adjudication as a third felony offender and sentence.

DISCUSSION
Assignment of Error Number One:
By this assignment, the defendant contends his sentence of life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence, is illegal because the habitual offender statute was erroneously applied. The defendant argues that once the state elected to charge him under the enhanced penalty provision of the Controlled Dangerous Substance Law, it could not then "double enhance" by filing a multiple offender bill of information against him. In response, the state argues that there was no double enhancement because the predicate offense for the second offense, CDS was not used in the chain of offenses for the habitual offender proceeding under LSA-R.S. 15:529.1.
LSA-R.S. 15:529.1(D) provides as follows:
D. (1)(a) If at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substance Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of Subsection A of this Section, or has been convicted *838 under the laws of any other state, of the United States, or of any foreign government or country of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction or adjudication or delinquency.
In the present case, the state charged defendant as a third felony offender relying on a July 1993 conviction of possession of stolen things and a December 1993 conviction of distribution of cocaine as the prior offenses, coupled with the current conviction of Schedule II CDS, second offense. In addition, a March 1997 conviction of possession of cocaine was the predicate offense for defendant's November 2000 conviction of possession of cocaine, second offense.
In State v. Murray, 357 So.2d 1121 (La. 1978), the supreme court stated:
LSA-R.S. 15:529.1 refers generally to "a felony." It contains no restriction as to the type of felony. Its provisions may be invoked after conviction or after sentence within a reasonable time after the prior felony becomes known. State v. Maduell, 326 So.2d 820 (La.1976); State v. McQueen, 308 So.2d 752 (La.1975). By statute, the district attorney is accorded wide discretion in determining when and how he shall prosecute. LSA-C.Cr.P. Art. 61. When more than one provision of the law applies, the district attorney has the discretion to elect which of the provisions to invoke. LSA-R.S. 14:4.
We discern no reason why this discretion should not apply to the use of the multiple offender procedures as long as the same offense is not used twice to enhance the penalty.
The factual situation in the present case is distinguishable from the facts of State v. Harrison, 32,643 (La.App.2d Cir.10/27/99), 743 So.2d 883, writ denied, 99-3352 (La.6/30/00), 765 So.2d 327. There, we held:
The bill of information charging Harrison with second offense possession of marijuana utilized as the underlying felony the earlier distribution of marijuana conviction in docket no. 30,437. Accordingly, the crime of possession of marijuana, second offense required proof of the predicate offense, distribution of marijuana. Said another way, the distribution of marijuana conviction was an element of the crime of possession of marijuana, second offense. It has been held that the use of both a La.R.S. 14:95.1 conviction, carrying of a firearm by a convicted felon, and the underlying felony used as an element of the firearm conviction to enhance under La.R.S. 15:529.1 constitutes double enhancement. State v. Bailey, 97-493 (La. App. 5th Cir.11/12/97), 703 So.2d 1325; State v. Hymes, 513 So.2d 371 (La.App. 4 th Cir.1987).
State v. Harrison, supra, and State v. Moten, 619 So.2d 683 (La.App. 4th Cir. 1993), prohibit the use of an underlying crime and the subsequent status offense together in a multiple offender bill of information to enhance the penalty of another felony conviction.
In State v. Moten, supra, the court stated:
A felon in possession of a firearm conviction may be used to enhance the penalty for a subsequent conviction only if the underlying felony used as an element of the firearm conviction is not also used in the same multiple bill. State v. Hymes, 513 So.2d 371 (La.App. 4th Cir.1987).
Defendant sought to quash the habitual offender bill in the trial court on the same grounds he now urges on appeal. His *839 argument that the state is trying to enhance the penalty as a third offender using a conviction that has already been enhanced is without merit. Because the 1997 conviction for possession of a controlled dangerous substance was used only once to support the status conviction and is not included in the chain of convictions used in the subsequent habitual offender proceeding, defendant's position is incorrect. His argument would only be correct if the state had attempted to charge him as a fourth felony offender using the 1997 conviction as one of those four convictions. Here, the state properly charged the defendant as a third felony offender, and the trial court was correct in denying the motion to quash. This assignment of error lacks merit.
Assignment of Error Number Two:
By this assignment, the defendant contends the trial court erred in denying his motion for a mistrial based upon the prosecutor's reference to the defendant's choice to remain silent. Defendant argues that questioning by the state, with regard to post-arrest warnings mandated by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is prohibited unless the question is used to lay a foundation for the introduction of a statement. The state argues that the reference to the Miranda warning was indirect and that the trial court's admonishment to the jury was the correct curative action.
LSA.C.Cr.P. art. 770(3) states, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(3) The failure of the defendant to testify in his own defense; or
* * *
In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, the United States Supreme Court held that it was a denial of due process for the state to utilize a defendant's post-arrest silence when cross-examining him at trial in order to impeach his exculpatory trial testimony. The defendant had received post-arrest Miranda warnings.
The court in Doyle stated:
The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights, see Michigan v. Tucker, 417 U.S. 433, 443-444, 94 S.Ct. 2357, 2363-2364, 41 L.Ed.2d 182 (1974), require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See United States v. Hale, 422 U.S. at 177, 95 S.Ct. at 2137.... Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives such warnings. (Footnotes omitted) 426 U.S. 610 at 618, 96 S.Ct. at 2240 at 2245.
In State v. Montoya, 340 So.2d 557 (La. 1976), our supreme court introduced the same principle:
In the instant case the defendant did not take the stand. Thus, there is even less justification here for the State to call attention to his silence at the time of *840 arrest than there was in Doyle, because the argument cannot be made that he was under cross-examination and thus fair game for impeachment by use of his silence at the time of his arrest. Therefore, we conclude it was clearly reversible error for the trial court to permit the State to use the arrested person's silence against him at trial. Doyle v. Ohio, supra; cf. United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).
We find that the holding in State v. Mosley, 390 So.2d 1302 (La.1980), does not support defendant's position. The facts of the instant case are in line with those found in Mosley, although that opinion does not include the verbatim colloquy of the questioning at issue. In Mosley, the defendant argued that the trial court erred in allowing the prosecutor to ask two police officers testifying for the state whether they had advised the defendant of his constitutional rights at the time of his arrest. He reasoned that such a line of questioning is necessary and relevant only if the state seeks to lay a predicate for the introduction of written or oral statements or confessions made by the defendant. Just as in this case, there was no statement or confession.
The court in State v. Mosley, supra, held:
This Court followed Doyle in State v. Montoya, supra, holding that it was reversible error for the prosecutor to elicit from the arresting officers the fact that the defendant did not respond to police questioning. Defense argues that Montoya governs this case because the prosecutorial examination here is also so prejudicial as to constitute reversible error.
* * * *
Although we disapprove of the conduct of the prosecuting attorney in this case, we cannot say that the obligue (sic) and obscure reference to the defendant's post-arrest silence amount to reversible error. We agree with the defendant that whether he was advised of his rights at the time of arrest was irrelevant. However, the prosecutorial examination did not stress the right to remain silent or attempt to elicit testimony regarding defendant's failure to respond to police questioning. The prosecutorial actions in this case, albeit improper, cannot be said to have resulted in prejudice to the defense of the accused. In the present case, the state first erred when it asked on direct examination whether or not the defendant had been advised of his Miranda rights. The officer answered that his fellow officer had advised the defendant of his rights. There was, however, no objection to this question and answer.
On re-direct, the state continued:
Q. You stated previously the defendant was Mirandised (sic)?
A. Yes, by Officer Pitman.
Q. In your presence did he make any statements post Miranda?
MR. BOWERS: Your Honor?
A bench conference was held, and the trial court removed the jury from the courtroom. Outside of the presence of the jury, the defense attorney argued that he had raised the objection because he thought there might have been an inculpatory statement of which he was unaware. He further argued that now his objection would appear to the jurors that he was trying to keep evidence of guilt from the jury. Based upon the defense counsel's objections, and aware of the problem that the state had created, the trial court inquired as to the intent of the state in pursuing this line of questioning.
*841 The state responded to the trial court as follows:
MR. BROSETTE: Your Honor, the State is more than happy to withdraw the question. It was just a question regarding one of the jurors (sic) to be informed that he had been advised of his Miranda rights and he exercised his right to remain silent which is his right which I think the officer has the ability to testify. The State meant no harm by the series....
The court then denied the motion for a mistrial and admonished the jury to disregard the question, stating:
The statementthe question asked by Mr. Brossette was properly objectionable. Mr. Bowers properly and timely objected to it. The question was improper and I sustained the objection. You're to disregard the question.
The trial court's denial of the motion for mistrial was correct. However, instead of simply continuing the trial without directing the jury's attention to the last unanswered question, the admonishment under the circumstances presents a further issue for review. In State v. George, 95-0110 (La.10/16/95), 661 So.2d 975, the supreme court also found the explicit admonition troubling. Yet, the court stated:
Although this case, unlike Mosley, involves an explicit mention of the defendant's post-arrest silence, Doyle condemns only "the use for impeachment purposes of [the defendant's] silence at the time of arrest, and after receiving Miranda warnings...." Doyle v. Ohio, 426 U.S. at 619, 96 S.Ct. at 2245, 49 L.Ed.2d 91 [emphasis supplied]; see State v. Arvie, 505 So.2d 44, 46 (La. 1987), wherein we stated "... the prosecutor may not use the fact of an accused's exercise of his constitutional right to remain silent, after he has been advised of this right, solely to ascribe a guilty meaning to the silence or to undermine by inference an exculpatory version related by the accused for the first time at trial." In this case, the trial judge's admonition made the prosecutor's remarks too obvious to miss, and invited the jurors to wonder why the defendant did not offer his alibi defense to the police at the time of his arrest.
Nevertheless, in brief, counsel does not dispute the state's claim that it did not affirmatively exploit the testimony to impeach the defendant's exculpatory account offered at trial. In the absence of that affirmative misconduct by the state, reasonable jurors may have understood the testimony in the way that the first circuit took the remarks, as a description of how the police investigation culminated in the formal arrest of the defendant with the routine incidents of custody, e.g., the reading of Miranda warnings to the person arrested. Accordingly, we find this assignment does not present reversible error.
The prosecutor's questions with regard to whether defendant was advised of his rights and made any statements post-Miranda are troubling and are not favored by this court. However, after reviewing the record, we cannot say the trial court erred in concluding that the state's questioning fell within the range of error which required a mistrial. The questioning presents no reversible error. Likewise, we do not find any reversible error in the trial court's decision to admonish the jury rather than to give no admonishment at all.
We have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction for possession of controlled dangerous substance, second *842 offense, is affirmed. Defendant's adjudication as a third felony offender and his sentence are affirmed.
CONVICTION AFFIRMED; ADJUDICATION AS A HABITUAL OFFENDER AND SENTENCE AFFIRMED.